Good morning, Your Honors. May it please the Court and Counsel, my name is Cami Woodward, and I'm here on behalf of the defendant appellate, Eliseo Domingues-Chalpeno. There are a few things that really just, for lack of better words, irk me in this case. The hearsay. It was not harmless. It was hearsay. Let's say it's hearsay. Yes. Why isn't it harmless? It looks like they've got your guy every which way. Your Honor. Out the hearsay. Because no other witness testified to those same facts. Okay. Let's take that out. Okay. They still have him on video buying the container in which the dope was smuggled. I mean, you know the story. Sure. I mean, they've got a goofy story about why they're there. You know, taking out the hearsay, they've got a pretty good case against him. I think, well, I think that the hearsay, Your Honor, is what ties him to the drugs and to the alleged supplier. You say it ties him to the drugs. Where did they find the drugs? In the trunk. And where was he? In the back seat of the car. He's in the car, and they find him beforehand buying the box that was tampered with. Yes. Well, that's not a good fact for you. No, it's not a good fact for me. I realize this. But, again, I think that the hearsay is the only thing from which the jury could infer that his carrying around that tied box in Albertson's was his knowing participation in the conspiracy. Yes, certainly, he had associations with the two that did admit to conspiring to possess in this case, back home in Minnesota. But the relationship they had, there's no evidence whatsoever that he used drugs or sold drugs. In fact, Your Honors, the evidence ---- Well, I think you're, there's something, you're prone towards hyperbole and extremes in your speech. When you say that there's no evidence, where everything is, that's the only reason, that it just, the facts don't bear that out. So, you know, I think you're better served to say, if you're going to argue that something is not harmless, not going, not stating things that are hyperbole and just aren't supported by the facts. That takes away from the credibility of your argument. Okay. It's like on the insufficiency evidence. To say there's no evidence, that just isn't true here. That just isn't true. Well, I think there's evidence, but I think it's insufficient to support. Okay, let's line up all the evidence against him without the hearsay. They drive from Minnesota overnight to Montana. I think it's uncontested that he drove the car coming to Montana. That's correct. We have him in the grocery store carrying the box of Tide. Correct. We have him in the grocery store with his three buddies kind of clustered around the ATM. We have them driving back without much of a stop in Montana. They're stopped on the way back to Minnesota. We discover in the trunk of the car a Tide box that's obviously being used to disguise the fact that they're carrying two pounds of meth. We have a phony baloney story of they came out looking for a roofing job. And I think a jury in that circumstance is likely to find that those three guys are in it together and there's clearly an amount that looks like it's for distribution. So why isn't that enough to have convicted without anything else? Because I think that had he taken the stand and explained his understanding of the choices that were made, the reasons. All right, but if he had taken the stand, stick to the evidence in the trial. He didn't take the stand, right? That's correct. So you don't get to augment the record right now that this is what he would have said. The record is what the record is. He can't be penalized for not taking the stand, but none of the three defendants testified. And his statement to the officer comes in, which as Judge Fletcher said, you know, really, you know, it wasn't the greatest. But he chose not to take the stand. So you can't here augment the record with what he was going to say and somehow factor that into the sufficiency of the evidence or the harmlessness argument. Am I wrong? Your Honor, with all due respect, I disagree. I think the record is clear that he was denied his choice to take the stand. And that is my third argument. Explain what you mean by that. What I mean is that when, and in the presence of the jury, the judge at the time, who I admire and respect, asked defense counsel, well, what are your plans? The government had just rested. Defense counsel said, we don't have any evidence. I've spoken with my client, and I have directed him not to testify, which I believe conveyed a couple of things. One, that he wanted to testify, which is probably a 22-5 issue. But I think it's also a trial error. Maybe, maybe not. He says that in front of the jury? Yes, Your Honor. It may very well be that what's in the lawyer's head is that he knows that the client is not going to testify. And he may want the jury, I mean, I'm kind of making this up, but it's, I think, a permissible inference, that he wants the jury to think that, you know, this lawyer is making him shut up. He might have taken the stand if he'd given his druthers. That's maybe not true, but it's also maybe not true to infer that the defendant wanted to take the stand. And, again, you're right. I can't argue things that I know that aren't on the record. That makes the defendant look better. And, I mean, I lived in a courtroom for 20 years, either as a lawyer or as a trial judge. And I don't care how many times you give the instruction on the Fifth Amendment. You know, I think juries probably do on some level. They think to themselves, well, if I were not guilty, I would get on the stand. And so when a lawyer says, I directed him not to, that takes the burden off of him and makes him look better. And it puts it on the legal, you know, making it a legal decision, because, you know, I don't think I wouldn't let a lawyer do that if I knew a lawyer was going to do it. But I think that it's to, it inures to your client's benefit, not to his, you know, not to his detriment. Well, again, Your Honor, I respectfully disagree. I feel like that comment implied that if Mr. Dominguez were to take the stand, that he was going to implicate or perjure himself. Somehow his testimony was going to be suspect. And I've thought about what His Honor brought up, and that is perhaps it was strategy on the part of the defense lawyer. Put it on himself. But I also think that the flip side of that could also be true. And to conclude. If the flip side could also be true, how can we possibly say that it was manifestly necessary for the judge to take it on himself to grant a mistrial? Well, I think because of that. If he granted a mistrial when there shouldn't have been a mistrial, then we've got a double jeopardy problem, right? No. Yes, we do. Because a mistrial without manifest necessity, the jeopardy is attached and it can't be retried. Without manifest necessity, yes. No. And I hate to cross-examine you, but you just said that that's one way to look at it and there's another way to look at it, and then we jump to manifest necessity. But if you can look at it two ways equally, that's not manifest necessity. I think that it's my opinion that it was more harm than good. Instead of it protecting him and looking good on him, I think it hurts him. What's your best case that more harm than good is manifest – is tantamount to manifest necessity? What would be – what would you cite as the best case to support that proposition? I wouldn't, Your Honor. I have no idea. Okay. For us to buy your argument, we have to find not only should a mistrial have been granted had a motion been made, we often, in addition, find that the judge should have done it on his own, right? Because that's what we have to do to buy your position. Yes, Your Honor. And you have no authority, I think you said, for that. No, Your Honor. Okay. Would you want to save any time?  Okay. Thanks. Morning, Your Honors. Brian Whitaker for the United States. Just to address, as the Court has pointed out on the trial judge committing the error for not declaring the mistrial, when there's two ways to look at it, that's not plain error. And we submit that the Court should not send it back on those grounds. There's no authority to send it back. The judge should have made that motion on its own. And we submit that that's not a reason to send it back. In my view, the trickiest issue on a legal standpoint is the hearsay, the ruling on the hearsay in terms of what the Court allowing in hearsay evidence and what's the exception. And I think you offered it for the truth of that they have a right to state their theory of the investigation or something along those lines. That's correct, Your Honor. And what's your position on that? Our position is that it was not hearsay because it was offered not for the truth of the matter asserted, but to show why the investigation unfolded the way it was, the way it did. And it was critical. When you look at the record, the ---- But why is that relevant to the jury as to how the investigation unfolded? You had the facts, and with the facts are what they are. It seems to me that it's just nonsense to argue that you're not introducing it de facto for the truth of the matter. Well, in this case, when the DEA agent testified that he went to the hotel, he talked to the employee there at the hotel and asked for the hotel records for the three defendants that came from Minnesota. That's what the DEA ---- that's what they knew about at that time. Then the clerk, he's talking about the interaction that he had with the clerk, and the clerk then provided the additional hotel records, the receipts, the documentation for this Melcore individual who came from Washington. And in that course of events, he said, the clerk said that they met together. Then he said, well, we didn't know about that guy at that time. So we then furthered our investigation. We talked to the folks in Idaho, the law enforcement guys in Idaho that had the video camera that captured Mr. Melcore coming from Washington into Idaho and then obviously into Montana, shows him going back. They had officers come to testify that. They had officers that did. But it's really only that the clerk forgets about all of this. The clerk, you've got the statement that what the clerk told the officer and all of that. But it is kind of ---- it is a, you know, I'll take for the appellant's point, it's a fairly crucial, if I were arguing that, I would say it's fairly crucial that you show how they got the dope. Sure. You know, how it got to the car. And this third person is the best evidence of how that all happened. And the clerk can't remember that. And I think a cleaner way to do it, but you didn't do it this way, is to put the clerk on first, and when it became apparent that the clerk couldn't identify who the person was, then you have prior statements and you can impeach her with that or rehabilitate her by her prior inconsistent statement. But it happened before, right? It did. It did. That's the way it happened. And certainly, Your Honor, you're correct that it would come in anyway as impeachment. The officer could have been ---- That's pretty clean in my mind. The other isn't so clean. I mean, that's, to me, you know, when you say it's not for the truth of the matter, in a way what you couldn't get in the front door comes in the back door because then that explains perfectly where the person came that had the dope. You know, because they didn't have the dope. Somehow the dope got in the trunk. Right. And part of the harmlessness of the hearsay in this case is that the hotel records came in, the drug dealer from Washington came and stayed at the same hotel. He drove all night, the same as the three from Minnesota did. Okay. That's another argument. That's another argument. Then that's saying, okay, you don't have to decide whether it's hearsay or not because it's harmless in any event. That's what I'm saying. That's correct. Because we could have made and we did make that permissible inference from the evidence that was already in the record. And so essentially this hearsay statement is cumulative evidence. It wasn't argued in closing. The statement wasn't used in closing. I have Mr. Sikora. Sikora. He's an assistant U.S. attorney who's now retired, and so I'm here arguing this case. He makes the argument, we're not here to speculate. What evidence supports, ladies and gentlemen, this explanation? And he starts ticking off a few things. They met the courier halfway from Washington. As you heard the information, they met the other person that was from Washington in the vehicle and left. And I would argue, Your Honor, that that is he's not using the statement from, let me say it this way. Let's assume that that statement never came in. This was permissible argument from the exact record in the evidence that was already in evidence. Yeah, but he's asking the jury to draw that inference and to draw that conclusion that the two. Excuse me. But given the testimony that we had, he's not merely asking them to draw the inference. We had testimony, hearsay, that was admitted where the officer says, I was told that they met. This cannot be anything but a reference to that. If we didn't have the hearsay statement, he maybe could argue it, but then he would be forced to make it as an inference. Well, we know this guy drove. We know these guys drove. We know da-da-da. But given the evidence that came in, that argument has to refer back to it. Any reasonable jury will understand it that way. Well, I understand Your Honor's point that that could be one way to look at it. I don't think there's only one way to look at it. I think any reasonable juror would have understood that to be a reference back to the testimony that they had heard that was hearsay. I guess my point is that AUSA Secor did not get up and say, the clerk told you they met together. I think that's different. I think he's not referring, when he's going through the evidence, when I've closed in cases, oftentimes I'll go through and say exactly, what are our best facts that support this element? And I would say, you heard the clerk take the stand. Well, in this case, I guess I would say, you heard the DE agent tell you that the clerk took the stand and said they met together. That's not what he said. If I was drawing the inference, I would use the same language to ask the jury to draw the inference. As you heard the information, they met the other person that was from Washington in the vehicle and then left. When he says, as you heard the information, what's he referring to? That that's the facts. I guess I would, if I was making the closing argument, I'd make the closing argument. I'm asking you what your argument would have been. I'm saying what. Well, you're right. I mean, that's what the record is. That's right. But again, I would say. So in fact, when you described the argument a moment ago, you didn't quite have it right. Well, I was going to read the statement. Judge Silverman read that to you after you said there was nothing in the oral argument, nothing in the closing argument. Well, Your Honor, I had it highlighted here, my tab down. I was going to get to that. But I wasn't trying to mislead the Court in any way. I was not trying to do that in any way. My argument is that if it was argued for the hearsay statement itself, that you would argue, well, that's what the clerk said or that's what the DEA agent told you. The clerk said that they met together. The evidence is that the hotel records, the facts show that this Melcore guy drove all the way from Washington. And so we would ask them to draw that inference that they met together at the hotel. I mean, he was a known drug dealer that the other co-conspirator knew. The girlfriend said, yeah, we knew this guy from Washington would be a drug dealer, essentially. And so they were meeting at the hotel at the same time. I mean, I guess I'm saying that you would ask the jury to draw that inference. But even if the statement was hearsay, which I'm not conceding that it was, it's still harmless because it came with it in the case. You know, if I can say something here, I expect better out of the U.S. Attorney's office than what we had in this case. Getting that testimony in directly from the officer that was clearly hearsay, that was clearly, in my mind, introduced for the purpose of the truth of it, even though the argument was that it was not, you know, you have a very strong case against this guy. You could have tried it properly, and you didn't. Now, I don't mean you personally, but your office. I expect better out of that office. I'll relay that when I get back, Your Honor. I'll relay that to the U.S. Attorney. Yeah. Well, I guess the cleaner way to me would have been that if you at the point when you did that with the officer, you didn't know that the clerk, did you know that the clerk was going to backpedal on you? Or you don't know. You're not the trial lawyer. Well, I don't know because I wasn't the trial lawyer. But I do know that, you know, she gave a good statement to the DE agent before that was clear from the statement that she knew she made the statement, and she obviously remembered. I don't know that there's any indication that we knew that she was going to forget the statement. That's my ñ when I reviewed the file, that's the indication I got. But, again, it's ñ And she was called after the officer. She was called after the officer. That's right. Yeah. Is there any case that says that if on the argument that when she did deviate from her statement, either because she seemed ñ you know, I don't know whether, you know, I don't know whether you argue whether she was being evasive or whether she was just forgetful or ñ and she just all of those things. Clearly, I think that the evidence code would allow to get the prior statements in at that point. Is there any case that says that even though you did it out of order, that if it would have been admissible after she testified, is there any case that says that saves you on that? Or if we think it's hearsay, do we just go to the harmless error analysis? Well, I don't know that there's an exact case that says the out-of-order thing, but it does say that if the witness either forgets or denies something, then we could have called the DEA agent to admit the statement for the impeachment purpose of the prior witness. Well, I'm familiar with that. And that's what I cited. I'm familiar with that. It just didn't occur in that order. That's what I cited in my brief, and I did not find a case that says when it's out of order, like happened exactly in our case. I did not find a case like that. Do we get to consider as part of our harmless error analysis that what you could have done appropriately to get it in? Or do we just say, no, it shouldn't have come in, assuming we find it inadmissible hearsay, and look at the evidence without that statement? Could you repeat that question? I'm not sure I quite understand what you're asking. Yeah, there are two ways to look at harmless error. One is to look at the evidence that we have, take out what I would view as impermissible hearsay, and then look at the evidence that remains and see whether the admission of the inadmissible evidence was harmless. Right. Another way to look at it is to look at the evidence that you have and to say, well, the U.S. attorney actually who was doing this properly could have got it in, and therefore, it would have come in, although in a slightly different way and perhaps a slightly less persuasive way. It's a little like the inevitable discovery rule. Okay, it's like if you could have done an inventory search later, you would have found it, even though, you know, how people argue that in terms of maybe they found it when they found it early, they shouldn't have looked at that point, but then it turns out there was they could have inventoried the car and they would have found it anyway, and then it comes in under the inevitable discovery. He's saying if it would have come in eventually, can you factor that into the harmlessness error? Okay, and I don't know the answer to that. I think your answer is I hope so. Well, yes, and I realize, Your Honor, viewing this as that it was hearsay initially. My argument is that it was not hearsay in the first instance. That argument, yeah. Yeah, but when you argue, then you have to go to the next. If someone gives you a hypothetical, then what if would, you know, can we consider that for the harmless error analysis? That's what he's asking you, and you say you're not sure. I'm not sure. My analysis was the traditional harmless error analysis test. So the evidence taken together, even if you take the hearsay statement out, there's still sufficient evidence to convict, and that was how I approached it, Your Honor. Just the standard straightforward harmless error analysis. Okay. We got it. We would ask that the Court affirm the case and that the evidence is there to do that. Thank you. Thank you very much. Ms. Woodward, you have a little time left. Thank you, Your Honors. I obviously agree that it was hearsay and it was not harmless. The record also shows that Alicio told the agent why he came here. The witness said that she didn't remember saying that, that he met with a fourth person's car, met with a fourth person. Alicio told the agent that the man never showed up. I think that but for that hearsay, we might have had a different outcome. Wait. When you say Alicio, you're speaking about your client. Yes. Dominguez Chalpino. Yes. Okay. But in his statement to the officer, is that where you're saying he said the man never showed up? Yes, Your Honor. He spoke with the officer. Right. So you're talking about that statement. Yes, Your Honor. And that came into trial. But wouldn't, you know, it's clearly my understanding of the rules of evidence that when a witness is, doesn't, you know, there clearly was a police statement that she had said, that the clerk had said certain things to the officer and all of that. Clearly, when someone either forgets or is being purposely evasive for any reason since they've decided they don't really want to finger the people that are involved in any number of things. And if you're an experienced trial lawyer, you know that people can either truly forget or they can get cases of convenient amnesia. And there is, you know, the evidence code does allow prior statements to come in when for either you or the prosecutor when a witness backtracks from statements that were made and the jury gets to decide was the one made at the time closest to the incident, is that true? Or is this one true? Or what's going on? So it could have come in under another theory. Don't you agree here? I absolutely agree with you, Your Honor. But that wasn't the theory they offered it for. Do you have any case that says, as Judge Fletcher said, when we analyzed for harmlessness, if it really was admissible in the sort of holistic way of looking at the trial, can we factor that in harmlessness? Do you have a case that says we can't? I don't have a case that says whether you can or can't factor that in. The only case I have is the one I cited that says it's not harmless if no other this Court's decision, if no other witness testified to the same facts. And I agree. It could have come in an impeachment. But what happened here is the government sort of got to gild the lily. And you asked Mr. Whitaker whether or not he knew if Mr. Socorro knew what his witness was or was not going to talk about. I have been with so many clients while Mr. Socorro prepped his witnesses, and he is a very experienced prosecutor. And I can tell you that, you know, I'm 99 percent sure he knew exactly what that witness wasn't going to say. It's just we have the rules and evidence in place for a reason, and I don't think we get to pick the ones that benefit us and disregard the ones that don't. He put the cart before the horse. I think a trained agent testifying to that twice and then adding a second time that the hotel clerk was uncooperative, it was error, and I think it was wrong. And I would ask this Court to reverse. And I did not cite the rule of cumulative error, but I certainly argued it. And my apologies. But I think we have the hearsay. I think that without that, we certainly have insufficient evidence. And then I think it was error for counsel to get up and convey the wrong message to the jury. So if not one of those issues is enough to overturn the conviction, I think that together, I think it's a And I would ask that at a minimum, we get another bite at this apple, another trial. Thank you. Thank you. Thank you. The case is submitted. Good morning.
judges: Silverman, Fletcher, Callahan